## Nugent v. Humpich et al.

(Decided October 18, 1929.)

TRABUE, DOOLAN, HELM & HELM, MATTHEW O'DOHERTY, W. W. THUM and BERNARD O. KEARNEY for appellant.

JOSEPH J. HANCOCK for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Claiming he had a contract for the purchase of certain property belonging to the estate of Ben Humpich,

William F. Nugent instituted this action for its specfic performance and asked in the alternative for $2,250 for its breach. He got neither and has appealed.

On August 6, 1923, Ben Humpich died, and three days thereafter a paper was probated as his will, the following parts of which are involved in this controversy:

"Item 2. All my property, real, personal and mixed, of every kind and description, wherever situated, I leave to my beloved wife, Matilda Humpich, for and during the term of her natural life, and at her death, in fee simple to my children, share and share alike, and if any child be dead leaving issue, such issue is to take the parent's share.

"Item 3. I hereby expressly authorize my wife, Matilda Humpich to sell and convey or mortgage any of my estate, real, personal or mixed, for the purpose of paying my debts and settling my estate or for the purpose of selling for reinvestment, or for any other purpose she may deem proper and do further empower her to invest and reinvest and sell or mortgage any part of my estate, real, personal or mixed, when and as often as she may deem proper, and the purchaser shall not be required to look to the application of the purchase money, but her conveyance shall give to such purchaser an absolutely clear title, provided however that all sales, mortgages, investments, and reinvestments shall be made only with the written consent of my Executor and Trustee hereinafter named or of the person who shall be acting as such Executor or Trustee at the time of such sale, mortgage, investment, or reinvestment is made or desired.

"Item 4. I appoint my good friend George Gutig, Executor of this Will and Trustee thereunder, for the purpose of giving the consent required by the third clause hereof and in the event of my friend Geo. Gutig should fail to act or should die, then I desire that my son, Theodore Humpich, shall act as such Executor and Trustee, in the event of the death or failure of my son Theodore to act, I desire that the judge of the 1st Chancery Branch of the Jefferson Circuit Court appoint a Trustee for the purpose of giving consent to sales, mortgages, investments and reinvestments as provided in said third clause. I request that my friend, Geo. Gutig,

and my son, Theodore, be permitted to qualify and act without bond.''

Gutig qualified and began the administration of the estate. Humpich left considerable estate, also many debts, and it was necessary that much of his real estate be sold, and much was sold. Nugent claims he bought a piece of this property. There were two papers put in evidence, which we shall for convenience call proposals Nos. 1 and 2.

Proposal No. 1 was:

''Louisville, Ky., March 27, 1924.

''Mr. Geo. Gutig, Security Bank, City. Dear Sir: I am authorized to offer you $2,750.00 cash for lot on River Road belonging to the Estate of Ben Humpich Deceased, same being 127 ft. 5 inches more or less front on River Road and running back to low water mark on Ohio River, title to property to be good and free of all liens and encumbrances except State and county taxes of 1924 which purchaser will assume.

''Respectfully submitted,

''C. J. Meddis, Agent.
''Matilda Humpich.''

Proposal No. 2 was:

''Accepted. Geo. Gutig, Exor.
''Security Bank Incorporated.

''Louisville, Ky., April 18, 1924.

''Geo. Gutig, Exor., Ben Humpich Estate. Dear Sir: I hereby offer you $2,850.00 for lot owned by Ben Humpich being 127 ft. 5 inches more or less on the North side of River Road being at the center line of Mill St., if extended next to my lot and running back to the low water mark of the Ohio River. I am to pay State and County Taxes for 1924.

''William F. Nugent.''

It is claimed by Nugent that Meddis was his agent, but apparently neither Gutig nor Mrs. Humpich learned that until some time after proposal No 2 was signed, for when Mrs. Humpich's daughter, Mrs. Naughton, brought back to Gutig proposal No. 1 with her mother's name upon it, Gutig said: ''Never mind about that proposition the proposition I have from another person is for $100.00

more.'' Proposal No. 1 was never delivered to Meddis, Nugent, or any one for them. The question is: Was proposal No. 2 an enforceable contract? We think not, because Mrs. Humpich did not sign it.

Because of section 470 of our Statutes, commonly known as the Statute of Frauds, no action can be brought to charge any person upon a contract for the sale of real estate, unless it or some memorandum thereof be in writing and signed by the party to be charged therewith or by his authorized agent.

Although the Statute of Frauds is not expressly pleaded, it is the rule in this state that a defendant may take advantage of the statute, not only by demurrer to a petition which shows a parol contract, but by a general denial of the contract made in response to such a petition. Johnson v. Broughton, 183 Ky. 628, 210 S. W. 455; Hocker v. Gentry, 60 Ky. (3 Metc.) 463; Klein v. Insurance Co., 57 S. W. 250, 22 Ky. Law Rep. 301; Cumberland & M. R. Co. v. Posey, 196 Ky. 379, 244 S. W. 770.

As pointed out in Coldwell v. Davidson, 187 Ky. 490, 219 S. W. 445, there was a time in the early history of this court that verbal contracts for the sale of real estate were enforced under certain conditions, but that opinion says that such contracts are not now enforceable by either party, and cities a large number of cases so holding. Therefore if Nugent has any right to this land it must be found in one of these writings.

Not only must there be a written memorandum of the contract signed by the party to be charged, but there must be an actual or constructive delivery of it. See Newburger v. Adams, 92 Ky. 26, 17 S. W. 162, 13 Ky. Law Rep. 339; Murrell v. American Express Co., 207 Ky. 322, 269 S. W. 293; 27 C. J. p. 300, sec. 383.

Gutig never signed proposal No. 1, and Mrs. Humpich never signed proposal No. 2. It cannot be disputed that in order to make an enforceable contract for the sale of any of the real property belonging to the Humpich estate, the concurrence of Mrs. Humpich and George Gutig, the executor, was essential.

These two papers cannot be read together to make out this contract, because they relate to different transactions. The most Nugent can claim for proposal No. 1 is that it is an undelivered acceptance by Mrs. Humpich of an offer made byMeddis. Proposal No. 2 is an acceptance by Gutig of a subsequent offer made by Nugent. Proposal No. 1, to sell to Meddis, cannot be construed to

be the grant of such authority to Gutig as would empower him as the agent of Mrs. Humpich to accept for her proposal No. 2, which was made by Nugent.

The sale of this lot was a matter involving the exercise of discretion. Such acts cannot be delegated by fiduciaries such as these. See 23 C. J. 1173. The testator out of abundance of precaution required the consent of both Mrs. Humpich and Mr. Gutig to the sale of his property. All the power they have is derived from the will; it requires their joint agreement to a sale to make it binding on this estate, and Nugent has not got it. Therefore he has no enforceable contract, and though he offered to do all the alleged contract required of him, the court properly dismissed his petition.

The judgment is affirmed.